State v. Supreme Forest, Woodmen Circle.

STATE OF NEBRASKA, PLAINTIFF, v. SUPREME FOREST, WOODMEN CIRCLE, ET AL., DEFENDANTS.

FILED MARCH 16, 1917.   No. 19761.

1. Insurance: FRATERNAL ASSOCIATION: DECREE: ENFORCEMENT. When this court has taken jurisdiction of the affairs of a mutual beneficiary society at the suit of the state by the state insurance board, and has entered a judgment and restraining order, then it is the duty of this court to see that its judgment is effective and is not violated by the parties.

2. ———: ———: ———. In the judgment heretofore entered in this case it was intended to preserve the affairs of the defendant society in statu quo as far as practicable until the governing body, the supreme forest, can interpret and, if necessary, amend its laws and regulations. In the meantime the general administration of the affairs of the society is committed to Mrs. Manchester, as supreme guardian, and those who are associated with her.

3. ———: ———: INJUNCTION: VIOLATION. Until such action by the supreme forest, complaints of violations of the orders of this court, or complaints of misdemeanors of officers in connection with the affairs of the order, must be addressed to this court.

PROCEEDING for contempt and injunction.  *Injunction allowed.*

*Willis E. Reed, Attorney General,* for plaintiff.

*John J. Sullivan, Arthur F. Mullen, Stout, Rose & Wells,* and *John B. Barnes,* of counsel, for Emma B. Manchester.

*Jefferis & Tunison, Brogan & Raymond* and *Frank H. Gaines,* for Dora Alexander *et al.*

SEDGWICK, J.

After the decision was entered in this case on the 19th of December, 1916, 100 Neb. 632, it appears that the parties continued the controversy, and some of the defendants who were enjoined by that decision afterwards complained against Mrs. Manchester to the executive council.  This executive council, it will be remembered, consists of 13 members, of which a majority of 7 are disputing with Mrs. Manchester as to the authority to conduct the affairs of the society.  The executive council then, by these 7 members, appointed a committee "to investigate the actions and transactions of the supreme guardian and make report."  That committee, on the 16th day of February, 1917, reported articles of impeachment against Mrs. Manchester.  This report is quite voluminous, covering about 18 sheets of typewritten matter, and embraces 11 or 12 specifications of alleged ground for removal.  Thereupon Mrs. Manchester filed in this case a complaint against the 7 members of the supreme executive council charging them with contempt of court in attempting to remove her from the office of supreme guardian in violation of the orders and judgment of this court, and charging that they have conspired "to circumvent, defeat, and make a nullity the judgment entered by this court."  She asked that they be enjoined from further proceeding in that matter until her complaint could be heard and a final order entered therein.  Upon this complaint the defendants complained of were cited to show cause why they should not be punished for contempt, and a temporary order of injunction was issued.  Affidavits were

filed by the contending parties and oral arguments were heard.

In our former decision it was determined: "The authorities of the state, under our statute, are given such control of fraternal beneficiary associations as to require the state to see that the interests of the members of the association are not sacrificed by unauthorized usurpations of authority on the part of officers of the association. Under the circumstances in this case, this court has original jurisdiction of an action in the name of the state brought by the attorney general, in behalf of the insurance board, to determine the jurisdiction and powers of the contending officers of the association." And in the opinion it was said: "There is more or less amb'guity and uncertainty in the articles of association and the by-laws, and, even if we assume that all parties have acted in good faith, it is apparent that these uncertainties have led to this destructive conflict of authority." It appeared that there was "an irrepressible conflict" between rival factions in this society that endangered the usefulness of the society, if not its very existence. The intention was to determine that it was the duty of this court on the complaint of the state authorities to take jurisdiction of this controversy and of the affairs of the association, and take such measures as the law provides to determine the controversy and protect the endangered interests of the membership. It was said that the law required such societies to have a representative form of government, and to this end they must have a governing body with supreme authority to control and regulate all of its affairs, and that this governing body must be freely selected directly or indirectly by the members of the society. It was found that in the main the differences between the contending factions arose from irreconcilable interpretations of the constitution and laws of the society, and that further radical and definite action was necessary on the part of the governing power, the supreme forest. It was intended to maintain the *status quo* as it existed when this action was begun as far as practicable until the governing body could act and

adjust the differences. The contention between the factions was so radical and in some respects so unreasonable that it was at one time thought that it would be necessary to place the affairs of the association in the hands of a receiver; but, as Mrs. Manchester and those associated with her had for so many years managed the affairs of the society and apparently with some considerable degree of credit, it was thought best, if possible, to continue that management until the supreme forest should act. In this view of the matter there is no doubt that in the meantime it was the duty of this court to see to it that its judgment should be effective, and that neither faction should be allowed to take such action as might endanger the existence of the society or seriously embarrass its work. When, during the pendency of the action in this court, a majority of the executive council attempted to remove Mrs. Manchester from the office of supreme guardian, it was determined, and we suppose so understood by all parties, that the rival and contending faction should not be allowed to determine the whole controversy by assuming the exclusive control of the affairs of the association. If Mrs. Manchester, as supreme guardian, should be found to be violating the orders of this court while the court has jurisdiction of the affairs of the association, or if she should be guilty of mismanagement of the affairs of the society so that it would become necessary to remove her from its management, application should be made to this court for that purpose. There is a general provision in the laws of the society that the executive council shall, when the supreme forest is not in session, have power to remove defaulting officers; but they are to report their proceedings to the supreme guardian, and some action in the premises by that officer seems to be required, so that there was perhaps some question as to whether it was intended by their laws that such power of removal should include the supreme guardian. At all events, such comprehensive powers could not be entrusted to the rival faction in this controversy while the disagreement between these factions was being adjudicated by the

courts. It is intimated in the proofs offered by the defendants in answer to the citation for contempt that the supreme guardian and some of her influential appointees are sacrificing the interests of the society in an attempt to control or influence the election of members to the supreme forest. Such practices, it is said, sometimes obtain in politics; but it is unfortunate indeed if such methods are used in these beneficiary societies. The supreme forest has a large membership. Its members are selected from all parts of the country, and this court cannot presume that it will, when convened, be under the control of selfish and corrupt influences. The thousands of interested members of the society in all parts of the country must be aware that it is in their interest as well as their duty to be informed in regard to the affairs of the society and to choose intelligent and honorable and disinterested members of this controlling body of their organization. Political differences must be submitted to the electorate, even though there may be danger that the individual voters will be imposed upon and misinformed, and there seems to be no other remedy in this case than to submit these differences to the membership of the association through their supreme forest in the hope and expectation that the voting membership will intelligently perform their duties.

The so-called articles of impeachment against Mrs. Manchester as supreme guardian, upon which the executive council was about to act when this citation was issued, contained 12 specifications. The first is as to the appointment of an attorney for the society. It is alleged in this specification that Mr. Burnett was supreme attorney prior to July, 1915, and that after the executive council had adjourned in July, 1915, the supreme guardian requested Mr. Burnett to resign and appointed Mr. Price, and the executive council in February, 1916, "concluded not to continue Mr. Price as attorney for the order, and selected Mr. Gaines for a period of five months," and that notwithstanding Mrs. Manchester had taken counsel with her attorney and had been advised that she did not have the power to

appoint the attorney, and had upon that advice recognized
Mr. Gaines as attorney, and had presided at the meeting of
the executive council at which Mr. Gaines was appointed
and had participated in that appointment, still the su-
preme guardian in December, 1916, entered into a contract
with Mr. Price as supreme attorney and attempted to dis-
miss Mr. Gaines as such attorney "that she may have her
own appointee who will be subservient to her will as su-
preme attorney," with other details as to the controversy
in regard to the attorneyship. The specification ends with
the charge: "We accordingly charge the supreme guard-
ian with violating the laws of the order and the rules, regu-
lations and directions of the supreme executive council in
her attempt to oust the supreme attorney from his office
and to employ W. B. Price as attorney for the order con-
trary to its laws and the rules, regulations and directions
of the supreme executive council." Mr. Gaines' communi-
cation to the council, which inaugurated the removal pro-
ceedings, contains the statement: "It is necessary that
the four officers, namely, the supreme guardian, the su-
preme clerk, the supreme physician, and the supreme at-
torney, must work in harmony, because each has independ-
ent duties to perform which are absolutely necessary to the
continuance and preservation of this order." In our for-
mer opinion we said that the matters in controversy be-
tween these rival factions appear "to include the appoint-
ment of financial and other agents and attorneys, and other
important matters." It is manifestly necessary that these
four officers named in Mr. Gaines' statement should be able
to act together in harmony, and as Mrs. Manchester and
those who were acting with her appeared to have generally
been in control of the affairs of the society when the rival
faction began their attempts to take over that control,
which condition continued substantially to the commence-
ment of this action, it seemed to be absolutely necessary in
the interests of the society that that condition should con-
tinue until the supreme forest would take final action mak-
ing the powers and duties of the respective parties plain

State v. Supreme Forest, Woodmen Circle.

and adjusting the whole controversy. This specification in regard to the attorneyship is the leading and perhaps the most important in the whole charge.

Another specification is that the supreme guardian without authority waived the payment of the $1 certificate fee required upon each application for beneficiary membership. This $1 fee goes to the general fund of the order, and it seems that the regulations make no provision for waiving it. This waiving of this fee caused, as is alleged, a loss to the order of "many hundreds of dollars." It seems that the regulations provided for another fee of $5 to be paid upon each application, and that the supreme guardian is authorized to waive the payment of this fee, but should not have made her order so general as to cover the $1 fee also. If Mrs. Manchester had personally profited by the waiving of this $1 fee, it would be an indication of corrupt practice; but, as there was no profit to her apparently in the transaction, it might possibly be considered as a mistake on her part. In view of our general conclusion as to the right of these respective factions to remove each other from all connection with the society while the matter is pending before this court, we will not regard it necessary to analyze these extensive charges. In the main they appear to relate to transactions prior to the commencement of these proceedings, or at least prior to the judgment heretofore entered herein; and, without determining whether any of the matters charged against Mrs. Manchester are of so serious a nature as to require this court to take action thereon, it is sufficient to say that they have not been brought to the attention of this court in such a manner as to require investigation. We are not determining which of these factions has the greater (or perhaps we should say the lesser) merit. The affairs of the society must be administered while we are awaiting the action of the governing body, and we are committing the administration to those authorities that have so long managed the business, believing that it is better to do so, unless and until it is made to appear that a receiver is necessary.

It appears that the rules of the order provide that the supreme guardian shall call a special meeting of the supreme forest upon request of the executive council. Since this citation was issued, such request has been made to Mrs. Manchester. The request specified the time and place of holding the meeting. An application was made to this court for an order requiring the supreme guardian to call the meeting for the time and place specified by the executive council, and proof was tendered which it was claimed showed that fair dealing and the ends of justice required that the supreme forest should convene at the time and place fixed by the council. But as the laws of the order were indefinite on that point, except as they required the supreme guardian to call the meeting, and so might be understood to place the responsibility upon her, and as there was such a radical difference between the factions upon this as upon all other questions, it was thought best to refer this contention also to the supreme forest itself. If the supreme guardian should name an unsuitable or improper time and place for the supreme forest to meet, that body will have ample power to correct the error.

Until the meeting of the supreme forest, matters must continue as nearly as practicable as they now are. If the supreme guardian, or members of the executive council, should in the meantime violate the orders of this court, or should wilfully convert or unlawfully dissipate the funds of the society, or be guilty of any other wilful misdemeanor in connection with the affairs of the order, complaint should be made to this court. Upon such complaint the court will take measures to determine the facts in relation thereto, and also whether such complaint is made without probable cause, and will make such order in the matter as the circumstances require. We find that the proceeding and attempt to remove Mrs. Manchester from the office of supreme guardian is in violation of the former judgment of this court; but as these defendants were acting under the advice of eminent counsel, members of the bar of this court in whom we have great confidence, and as our find-

ings and judgment heretofore entered were not as formal and comprehensive as they might have been, we cannot find that the defendants have been guilty of an intentional and wilful disobedience of the injunction heretofore allowed, and no other penalty wll be imposed than to require the individual defendants in this citation to pay the costs of this hearing.

The preliminary injunction upon this citation is made permanent, and the costs upon this citation will be taxed against the defendants therein.

INJUNCTION ALLOWED.

ROSE, J., not sitting.